THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TAMMY WAYNE | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: |
| | ) |
| Superior Air-Ground Ambulance Service, Inc. | ) |
| Darren Frasca, and Jeff Collins, | ) |
|     Defendants. | |

**PLAINTIFF'S COMPLAINT**

NOW COMES Plaintiff TAMMY WAYNE (hereinafter "Tammy"), by and through counsel, Robin Remley of the Law Office of Robin Remley LLC and for her COMPLAINT against the Defendants, Superior Air-Ground Ambulance Service, Inc. ("Superior"), Darren Frasca ("Frasca"), Jeff Collins ("Collins") and unknown supervisors and managers, states as follows:

**I. Introduction**

1. Plaintiff filed this action to redress violations by Defendants, Superior, Frasca, Collinsand unknown supervisors and managers of the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA") and other related claims.

**II. Jurisdiction and Venue**

2. This action is initiated pursuant to the FMLA, ADA, among other claims. This

Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions offair play and substantial justice..

3. The United States District Court for the Northern District of Indiana has original subject matter jurisdiction, and venue is properly laid in this district because the claims arise under laws of the United States and all actions took place in the county of Lake, State of Indiana.

### III. Parties/Background

4. Plaintiff, Tammy Wayne, is a citizen of the United States, and at all times described herein, was residing in the County of Lake, State of Indiana.

5. Defendant, Superior, does business in County of Lake, State of Indiana.

6. Defendants Frasca and Collins were all supervisors or employees of Superior, with authority and/or control over employment actions with respect to Tammy, including but not limited to her constructive discharge/termination, which is the subject of this litigation.

7. Frasca was a supervisor or superior of Tammy—with frequent contact and authority over employment decisions prior to, and during Tammy's medical leaves, and up to and including her termination.

8. Collins was a supervisor or superior of Tammy, (or portrayed himself as such and was allowed to do so).

9. Collins had authority over employment decisions pertaining to Tammy, and/or attempted to do so with the knowledge of Superior, prior to and during Tammy's medical leaves, and up to and including her termination.

10. Frasca had authority or the ability to prevent or control or perpetuate actions with

respect to WAYNE's employment.

11. Collins had authority or the ability to prevent or control or perpetuate actions with respect to WAYNE's employment.

12. Frasca took part in human resource related activities and actions.

13. Collins took part in human resource related activities and actions.

14. Frasca had knowledge of, or should have had knowledge of, the requirements of the FMLA, and other employment laws.

15. Collins had knowledge of, or should have had knowledge of, the requirements of the FMLA, and other employment laws.

**Factual Background**

16. Tammy worked as the Human Resources Manager for Superior, on a full-time basis.

17. On or about March 27th, 2021, Tammy applied for intermittent FMLA leave, to begin March 27th 2021, and ending July 29th 2021. This was due to a chronic condition related to low platelet count, and causing symptoms of dysplasia and fatigue when flare ups would occur.

18. Thereafter, Tammy experienced harassment and retaliation in various ways.

19. On March 31, 2021 Tammy received an email from Collins, falsely alleging Tammy instructed her assistant that she could not bring new hires through the administration side while taking them to the classroom. Collins indicated that he wants everyone to feel welcome, and is upset with Tammy. Collins sent a carbon copy of the email to Frasca and another employee, to intentionally paint Tammy in a false light.

20. On or about April 5th, 2021, Frasca informed Tammy that Superior wanted a new, younger female to be the recruiter (previously included in Tammy's job functions). Tammy asked if her job was in jeopardy. Frasca did not deny this, and instead shrugged his shoulders and said it was due to "relationship issues" with Collins.

21. On or about April. 6th 2021, medical documentation was faxed from Tammy's doctor to FMLA Source (the FMLA coordinator for Superior) for her FMLA certification. The documentation indicated Tammy's condition was low platelet count, a chronic health condition, which would continue over an extended period of time.

22. The certification indicated that when symptoms of dysplasia and fatigue flare up, Tammy would be unable to perform job duties.

23. The certification also indicated that the frequency of flare ups/leave was expected to be up to one time per week, with duration lasting up to 8 hours( for an entire day); and will have flare ups one to two times per month.

24. The certification also indicated that she had an appointment April 12th 2021 for a stress test & echocardiogram, and an appointment April 16th, 2021 in cardiology.

25. Around the same time, Tammy applied for intermittent FMLA to care for her elderly father.

26. On or about April 9th, 2021. Neurological Institute (Dr. Cristea) sent a fax to FMLA source demonstrating the need for leave to care for her father. The request for leave was for the period March 11, 2021 through September 19, 2021.

27. The documentation related to Tammy's father indicated that he had a chronic, lifelong health condition. The estimated frequency for this leave was one time every three

months, lasting up to one day. However, the documentation indicated flare ups could be up to one to two times per month.

28.     Tammy's request for intermittent leave <u>for herself</u> was approved on April 12, 2021.

29.     Around this same time period, Tammy's mother was also experiencing medical issues and needed periodic care, so Tammy also applied for intermittent FMLA leave related to her mother.[1]

30.     On April 13th, 2021, Tammy sent an email to Collins regarding her FMLA leave. In this email, she relayed her schedule, just in case someone needed her. She indicated that she would be out on FMLA leave April 13th, April 16th, April 19th, April 20th.

31.     On May 4th, 2021, Tammy's request for leave <u>related to her father</u> was approved.

32.     On May 5, 2021, Tammy learned via email that she was completely left out of a serious employee disciplinary matter and investigation involving sexual harassment. This was clearly part of Tammy's duties and role, yet she only learned of this weeks after its occurrence, and well after investigation.

33.     On May 10, 2021 Tammy emailed Karen (another manager at the time), indicating she (Tammy) thinks she should have been involved in this matter. Karen responded that she has asked Jeff Wilken why Tammy wasn't involved. Wilken never responded.

34.     On May 10, 2021, Tammy forwarded Karen an email she received from a client, Eileen from Franciscan Alliance. Eileen had received the email from the new Superior

---

[1] Note: Tammy did not end up utilizing this leave.

recruiter. This email showed the new recruiter was sending an email string with confidential information—that was not secure—showing she essentially did not understand the job or requirements, and was unqualified.

35.    On May 11th, 2021. Tammy notified Karen that her doctor diagnosed her with anxiety disorder, that she was on medication, and that she was referred to a counselor. Tammy indicated that she had her first appointment scheduled for the following Monday at 4:00 PM, and that she would work through her lunch hour to make up my time. She asked Karen to keep confidential, because she was is not comfortable talking to Frasca.

36.    On or about May 26, 2021, Tammy notifies Karen regarding various issues related to the new recruiter that could cause risk/liability issues for Superior.  Karen wrote back that she concurs with Tammy's concerns and has alerted Frasca. Again, the new recruiter who took over some of Tammy's duties does not know procedures at all. Tammy is essentially training her younger, unskilled, replacement.

37.    On or about May 26, 2021. Tammy had a doctor appointment, and was referred to a psychologist. She was diagnosed with depression and generalized anxiety disorder.

38.    May 27, 2021, Tammy learned that there was an open house June 10, 2021. Tammy was never informed of this at work, or by Collins or Frasca. It was never contained in an email to her, or even mentioned. Again, Tammy was intentionally excluded.

39.    The only reason Tammy learned of this event, was through a customer from an outside vendor (Franciscan). Again, this demonstrates Tammy being further ostracized, harassed, and embarrassed.

40. Tammy approached Collins about this event to voice her complaints, and asked why she was not aware of this event. Collins told Tammy that it was for outside medical facilities only and was "no big deal." Collins told her that she did not need to go, and that it was not necessary. Accordingly, Tammy did not attend.

41. Tammy then learned that it was, in fact, a "big deal." It was a ribbon cutting ceremony of sorts--a big event, with important and key people. It seemed everyone knew about the event and its importance, except Tammy.

42. The invite (which she did not receive in the first place) said nothing about a ribbon cutting. Likewise, neither Collins nor Frasca told Tammy it was a ribbon cutting, or even a big event. Instead she was intentionally told the contrary.

43. June 11th, 2021. Tammy sent email to Frasca explaining and voicing her concerns of this harassment. Tammy explained what happened, as well as her humiliation due to intentionally being excluded from this event, and being led to believe she need not attend.

44. Thereafter, Tammy had a phone conference with Frasca. During that conference, Frasca belittled and chastised Tammy. Instead of taking her complaints seriously or investigating Collins or delving further, Frasca retaliated against Tammy, and suddenly demanded she now suddenly transfer to the Elmhurst, Illinois office (likely a 3 hour roundtrip commute) or lose her job/be terminated.

45. At that time, Tammy lived in Indiana, her doctors and medical treatment related to her FMLA leave were in Indiana, her mother and father lived in Indiana, and physicians for both her father and mother were in Indiana. Thus, Tammy's disabilities, as well those of her parents, necessitated she be close to home.

46. Thus, Frasca's ultimatum interfered with Tammy's healthcare, her father's healthcare, her mother's healthcare, Tammy's ability to care for her parents, and overall--interfered with her need for, and ability to take FMLA leave.

47. Forcing Tammy to do a three hour roundtrip and be incredibly far away from her parents, as well as her healthcare providers-was intentional and without reason, and in retaliation for seeking FMLA and/or to retaliate against her for seeking FMLA leave for herself and to care for her parents.

48. Additionally, Tammy was able to perform the duties of her job, with the ability to take these intermittent leaves and with the accommodation of being close to her providers and her parents.

**COUNT I – Family Medical Leave Act Interference-all Defendants**

49. Paragraph 49 hereby re-alleges and incorporates Paragraphs 1 through 48 as if fully set out herein.

50. Defendant SUPERIOR was and is a covered employment under the FMLA, 29 U.S.C. Sect. 2611(4)(A).

51. At all times herein relevant, Tammy was an eligible employee with aserious health condition, pursuant to the FMLA.

52. The FMLA prohibits employers from "interfering with, restraining, or denying" an employee's exercise of FMLA rights. See 29 U.S.C. 2615.

53. At all times herein, SUPERIOR had more than 50 employees, and thus is subject to the mandates of the FMLA.

54. Tammy was eligible for FMLA leave at all relevant times in that She had worked

more than 1250 hours in the preceding twelve (12) months prior to application for leave.

55. Tammy was qualified for FMLA leave in that she had a serious health condition, per the FMLA. She qualified for leave for each of her parents, because they also had serious health conditions.

56. Defendants' actions in demanding Tammy transfer to Elmhurst, in light of her various approved FMLA leaves and circumstances, interfered with, and restrained Tammy's exercise of FMLA rights.

57. Defendants' actions in terminating or constructively discharging Tammy interfered with, and restrained Tammy's exercise of FMLA rights.

58. Defendants Frasca and Collins are individually liable pursuant to definitions under the FMLA, due to their control over Tammy's leave, benefits, and termination. Each had the ability and duty to ascertain the rules, regulations, and requirements of the FMLA, but failed in doing so and/or properly applying the same.

59. Further, SUPERIOR is vicariously liable for the actions and inactions of Frasca and Collins, via respondeat superior, as each was acting within the scope of his/her employment with SUPERIOR at the time of his/her actions and/or inactions.

60. Defendants' actions were not in good faith.

61. As a direct and proximate result of these Defendants' conduct, Tammy has suffered damages, including but not limited to having to move to Wisconsin—away from her family and healthcare providers—for employment, lost pay and benefits, distress, and costs and attorneys fees.

WHEREFORE, Plaintiff seeks judgment against the Defendants in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated damages per statute, attorneys

fees, and all other just and proper relief.

### COUNT II – Violation of the Family Medical Leave Act – Retaliation- All Defendants

62. Paragraph 62 hereby re-alleges and incorporates Paragraph 1 through 61 as if fully set out herein.

63. The actions and inactions of Defendants were in retaliation for Tammy exercising her FMLA rights and/or complaining about being excluded and harassed after application for FMLA leave.

WHEREFORE, Plaintiff seeks judgment against the Defendants in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated or punitive damages per statute, attorneys fees, and all other just and proper relief.

### COUNT III – Intentional Infliction of Emotional Distress--

64. Paragraph 64 hereby re-alleges and incorporates Paragraph 1 through 63 as if fully set out herein.

65. Defendants knew of should have known that Tammy was peculiarly susceptible to emotional distress, having her own health issues, the health issues of her parents, and the need for FMLA leave.

66. Defendants' actions, including the demand that she commute practically 92 additional miles roundtrip, and/or 3 hours roundtrip under the circumstances. were extreme and outrageous under the circumstances—not to mention, downright cruel.

67. Defendants' actions were intentional, or recklessly negligent;

68. Defendants' extreme and outrageous behavior caused Tammy to suffer severe

emotional distress.

WHEREFORE, Plaintiff seeks judgment against the Defendants in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated or punitive damages per statute, attorneys fees, and all other just and proper relief.

### COUNT IV – CONSTRUCTIVE DISCHARGE

69. Paragraph 69 hereby re-alleges and incorporates Paragraph 1 through 68 as if fully set out herein.

70. The threat of transferring to Elmhurst vs. termination made working conditions so intolerable, in addition to the harassment and discrimination, that a reasonable person would not and could not return to the position, amounting to constructive discharge.

WHEREFORE, Plaintiff seeks judgment against the Defendants in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated or punitive damages per statute (and based on Defendants' intentional behavior), attorneys fees, and all other just and proper relief.

### COUNTV VIOLATION OF THE AMERICANS WITH DISABILITIES ACT-DISCRIMINATION-Defendant SUPERIOR

71. Plaintiff hereby incorporates the foregoing paragraphs 1-70 as if fully stated herein as paragraph 71.

72. Plaintiff, at all times herein, was a qualified individual with a disability and/or was perceived to have a disability by Superior.

73. Plaintiff was substantially limited in life activities as described herein in that she

had a chronic condition incapacitating her and necessitating entire days off.

74. Further, Plaintiff had two parents, both of whom suffered health problems that substantially limited their life activities. Thus, Plaintiff's parents were disabled, and Plaintiff was associated with disabled individuals or perceived to be associated with disabled individuals. She had FMLA leave to care for both parents.

75. Defendant Superior discriminated against Plaintiff, via the foregoing listed behaviors, and by ultimately terminating her, based upon her status as a disabled individual or her association with disabled individual(s) or upon the perception that she or these individuals were disabled.

**WHEREFORE**, Plaintiff hereby requests judgment against Defendants in amount to fully compensate her, for all punitive or liquidated damages available by statute or otherwise, for all costs, interest and attorneys fees related to this matter, and for all other just and proper relief in the premises.

## COUNT VI- VIOLATION OF AMERICANS WITH DISABILITIES ACT—FAILURE TO ACCOMMODATE- Defendant SUPERIOR

76. Plaintiff hereby incorporates the foregoing paragraphs 1-75 as if fully stated herein as paragraph 97.

77. Plaintiff needed accommodation in form of intermittent leave for herself, as well as intermittent leave to care for her disabled parents. Plaintiff suffered various issues, including anxiety and depression, as well as low platelet count and severe fatigue necessitating leave.

78. Additionally, Plaintiff's medical doctors and appointments were within the Northwest Indiana area and Plaintiff resided in Northwest Indiana.

79. Further, Plaintiff's need for leave in relation to her parents included the need to be close by in the event she needed to care for her parents.

80. Thus, Plaintiff was able to perform the duties of her job, with the accommodation that she be working in the Northwest Indiana office—not a 3 hour roundtrip away.

81. Superior was well aware of the foregoing needs for accommodation. These needs were clearly reasonable and unduly burdensome, as three types of intermittent leave had been approved for Plaintiff.

82. However, despite the foregoing, Superior blatantly ripped these accommodations away from Plaintiff, in complete disrespect and with utter disregard.

83. Instead, Superior (via Darran Frasca and otherwise), demanded that Plaintiff leave her longstanding Northwest Indiana position, and report to Elmhurst, Illinois instead.

84. This demand completed obliterated any accommodation given to Plaintiff, as it would have required an over 46 miles additional commute each way (92 miles roundtrip), or approximately an additional ninety (90) minute commute each way (3 hours roundtrip) with rush hour traffic.

85. Thus, Superior's demand constituted a complete failure to accommodate (and also made working conditions so intolerable under the circumstances that no reasonable person could continue to work under such circumstances, constituting constructive discharge).

**WHEREFORE**, Plaintiff hereby requests judgment against Defendants in amount to fully compensate her, for all punitive or liquidated damages available by statute or otherwise, for all costs, interest and attorneys fees related to this matter, and for all other just and proper relief in the premises

Respectfully submitted,
/s/ Robin G. Remley
Robin G. Remley
robin@remley-law.com
Attorney for Plaintiff TAMMY WAYNELaw Office of Robin Remley LLC 123 N. Main St., Suite 204-C
Crown Point, IN 46307
(219) 756-9600

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Respectfully submitted,

/s/ Robin G. Remley
Robin G. Remley
robin@remleylaw.attys.pro
Attorney for Plaintiff, TAMMY
WAYNELaw Office of Robin
Remley LLC
(219) 756-9600 / Facsimile: (866) 922-3497

## CERTIFICATE OF SERVICE

I hereby certify that on September 7 2022, I filed the foregoing COMPLAINT with theClerk of the Court, and that all parties currently of record will be served via the CM/ECF filing system.

/s/ Robin G. Remley