UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| TAMMY WAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:22-CV-264-PPS-JEM |
| | ) | |
| SUPERIOR AIR-GROUND | ) | |
| AMBULANCE SERVICE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>OPINION AND ORDER</u>**

Tammy Wayne was a human resources manager at Superior Air-Ground

Ambulance Service. She applied for and obtained intermittent leave pursuant to the

Family and Medical Leave Act, in connection with a chronic medical condition. Around

the same time, she applied for and obtained FMLA leave to care for her elderly parents.

During the period she was on FMLA leave, Wayne claims that she experienced

harassment and retaliation from two coworkers, Darren Frasca and Jeff Collins. The

conflict culminated when Frasca "suddenly demanded" that she "transfer" to the

defendant's office in Elmhurst, Illinois (resulting in a three hour commute), or else lose

her job.

In Wayne's view, the company's abrupt decision to move her position to

Elmhurst was an unfair "ultimatum" designed to prevent her from performing her job

duties with "intermittent leaves and with the accommodation of being close to her

providers and her parents." [DE 1, ¶¶ 46–48.] Although the complaint omits details

about when and how her employment with Superior ended, it appears her discussion

with Frasca was shortly followed by her departure from the company. Wayne has not just sued her former employer, Superior, but her two former supervisors (Frasca and Collins), as well.

Wayne asserts claims of FMLA interference and retaliation (Counts I–II) against all defendants; discrimination and failure-to-accommodate claims under the Americans with Disabilities Act against Superior (Counts V–VI); and state law claims for intentional infliction of emotional distress and constructive discharge against all defendants (Counts III–IV). *Id.*, ¶¶ 49–85. Defendants now seek partial dismissal: they claim that Counts I, II and IV should be dismissed against all defendants, that Count II against Collins should be dismissed, and that Count VI against Superior should also go by the wayside. [DE 8.] As detailed below, I largely agree with the defendants.

## Factual Background

Wayne worked for Superior as a human resources manager on a full-time basis. [DE 1, ¶ 16.] Wayne was a frequent user of FMLA. In the spring of 2021, Wayne applied for and obtained approval to take intermittent FMLA leave, to begin March 27 and conclude July 29, in connection with a chronic condition she suffers from. *Id.*, ¶¶ 17, 28. Around the same time, she separately applied for and obtained approval to take intermittent FMLA leave from March 11 to September 29, to care for her father. *Id.*, ¶¶ 26–27, 31. She also applied for, but did not utilize, intermittent FMLA leave to periodically care for her mother, who was also experiencing health issues. *Id.*, ¶ 29. After Wayne applied for FMLA leave, she claims that she was subjected to a pattern of

"harassment and retaliation" from two coworkers in the human resources department, Jeff Collins and Darren Frasca. *Id.*, ¶ 18.

Although Wayne evidently worked with both of them, the complaint does not provide many details about Collins' and Frasca's roles at Superior. Wayne claims that they were both "supervisors or employees" of the company, who had "authority and/or control over employment actions with respect to Tammy, including but not limited to her constructive discharge/termination." *Id.*, ¶ 6. They allegedly possessed "the authority or ability to prevent or control or perpetuate actions with respect to" Wayne's employment. [DE 1, ¶¶ 10–11.] As to Frasca, Wayne specifically alleges that he was "a supervisor or superior" who had "frequent contact and authority over employment decisions" prior to and during the periods Wayne applied for and obtained FMLA leave. *Id.*, ¶ 7. Collins, for his part, allegedly "attempted to" exercise authority over employment decisions affecting Wayne, "with the knowledge of Superior," during the period in question. *Id.*, ¶ 9.

Notably, there is nothing in the complaint suggesting these individuals had any authority over Wayne's applications for FMLA leave. To the contrary, Wayne specifically alleges that "FMLA Source"—whatever that means—served as "the FMLA coordinator for Superior." I presume the FMLA Source is an entity or human resources vendor of some kind, but whether that's true is entirely unclear. In all events, "the FMLA Source" (not Frasca or Collins) received and processed correspondence in connection with her leave requests. *Id.*, ¶¶ 21, 26. Wayne does state that she emailed

3

Collins on one occasion about taking FMLA leave in April 2021, *id.*, ¶ 30, but there is no suggestion that Frasca, specifically, was aware of her leave requests.

A few days after she applied for FMLA leave, Wayne received an email from Collins (with a copy to Frasca) that she says painted her "in a false light." [DE 1, ¶ 19.] There is no suggestion that this email had any connection to her leave requests. About a week later, Wayne claims that Frasca informed her that "Superior wanted a new, younger female to be the recruiter" for the company (Wayne had previously served as a recruiter). *Id.*, ¶ 20. Wayne inquired whether this change would put her job at jeopardy, and Frasca "shrugged his shoulders and said it was due to 'relationship issues'" between Collins and Wayne. *Id.*

Wayne informed Collins that she would have to be taking FMLA leave on April 13, 16, 19, and 20. [DE 1, ¶ 31.] A few weeks later, Wayne claims she learned via email that she was "left out of a serious employee disciplinary matter" that "was clearly part of [her] duties and role." This prompted her to reach out to "Karen" – Wayne identifies her as "another manager" in the human resources department. *Id.* Karen, in turn, asked another employee, Jeff Wilken (his role is also unclear), why Wayne was not involved; Wilken never responded. *Id.* In another episode a few days later, Wayne claims to have forwarded Karen an email from a client, Franciscan Alliance, which Wayne claims reflected a "new Superior recruiter . . . sending an email string with confidential information," demonstrating this new hire "did not understand the job or requirements, and was unqualified." *Id.*, ¶ 34. She claims to have notified Karen later in May 2021

about "various issues related to the new recruiter," and Karen indicated that she "concur[red] with Tammy's concerns" and had alerted Frasca to the problems. *Id.*, ¶ 36. Essentially, these incidents boiled down to Wayne reviewing the work of another, more junior employee in the department, forwarding it to an apparent supervisor (it's not clear what roles "Karen" and Frasca played at the company), and taking issue with the quality of the more junior employee's work.

Finally, Wayne claims that she was kept in the dark about an "open house" event held in June 2021. [DE 1, ¶¶ 38–39.] When she found out about the event, she voiced her concerns with Collins, who told her that "it was for outside medical facilities only and was 'no big deal,'" and that Wayne did not need to attend. *Id.*, ¶ 40. Wayne did not attend, but she believes it was in fact a "big deal" – a "ribbon cutting ceremony . . . with important and key people," and everyone seemed to know about it, except her. *Id.*  ¶ 41.

Thereafter, Wayne emailed Frasca explaining her concerns about being excluded from the event. *Id.*, ¶ 43. A phone call followed, during which she claims Frasca "belittled and chastised" her, and rather than investigating Collins for supposedly misleading her about the nature of the "open house" event, "retaliated against [her]" by "demand[ing] she now suddenly transfer to the Elmhurst, Illinois office (likely a 3 hour roundtrip commute) or lose her job/be terminated." *Id.*, ¶ 44.

Wayne viewed this statement as an unfair "ultimatum" that interfered with her ability to both keep her job and access healthcare services and care for her elderly parents in Indiana. *Id.*, ¶ 47. She claims that Frasca's "demand" would have added at

least ninety-two miles (or ninety minutes) to her daily commute during rush hour traffic. *Id.*, ¶ 84. It's unclear from the complaint how or when she left the company, but it appears she departed sometime after this conversation with Frasca. What we do know is that she has since relocated to Wisconsin, "away from her family and healthcare providers." *Id.*, ¶ 61.

## Discussion

Before diving into the substance of Defendants' motion, let's start with a brief discussion of the standards that govern my decisionmaking. Under Federal Rule of Civil Procedure 8(a), Wayne's complaint is required to contain "a short and plain statement showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

At this stage, I accept the complaint's allegations as true and draw all reasonable inferences in Wayne's favor. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). However, to avoid dismissal under Rule 12(b)(6), her claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires a plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that a plaintiff must plead facts that

"suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[S]heer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden. *Taha*, 947 F.3d at 469.

## I.      FMLA Claims

The first two counts of the Complaint relate to alleged FMLA violations: Count I for FMLA interference and Count II for FMLA retaliation. Defendants have moved to dismiss the interference claim in its entirety and the retaliation claim as to Collins individually. [DE 8 at 1.] They tell me these claims must be dismissed because the facts alleged fail to state a plausible interference claim and there are no factual allegations in the complaint supporting a plausible theory of individual liability against Collins. [DE 9 at 2–5.]

Employers are prohibited from interfering with an employee's attempt to take leave under the FMLA or for retaliating against employees who take such leave. *See* 29 U.S.C. § 2615. A claim of interference with FMLA rights requires a plaintiff to establish that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020);

*Guzman v. Brown Cnty.*, 884 F.3d 633, 638 (7th Cir. 2018).

The fifth element—that the plaintiff be "denied" FMLA benefits—has been the subject of some debate. *See generally Ziccarelli v. Dart*, 35 F.4th 1079 (7th Cir. 2022) (noting distinction between cases requiring that an employer "denied [an employee] FMLA benefits to which he was entitled," and cases requiring that the employer "denied *or interfered with* FMLA benefits to which [an employee] was entitled" (emphasis added)). The Seventh Circuit has observed that the Act's implementing regulations "make clear that the ways in which an employer may interfere with FMLA benefits are not limited simply to the denial of leave," and "encompasses 'us[ing] the taking of FMLA leave as a negative factor in employment actions' and 'discouraging an employee from using such leave,'" short of an outright "denial" of benefits. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015) (internal citations omitted).

In *Preddie*, the court found the record contained reasonable evidence from which a jury could conclude the defendant had interfered with the plaintiff's exercise of FMLA rights. One of the stated reasons for non-renewal of his contract was his absence from work, "which appear[ed] to be related to FMLA-qualifying conditions," and any other reasons given for his dismissal were "tied logically and practically to those absences." In addition, the court highlighted evidence supported the inference that the defendant had discouraged the plaintiff from incurring additional absences and there would be "adverse consequences" to taking leave. *Preddie*, 799 F.3d at 818 & n.35 (noting the absence of "overt threats" is "not determinative" on whether plaintiff has an interference

8

claim and "the critical question is whether the employer's actions would discourage a reasonable employee from taking FMLA leave").

Wayne claims that she sought FMLA leave on three occasions in 2021. Nowhere in the complaint does she suggest she was denied FMLA leave to which she was entitled. To the contrary, she claims that when she sought leave to which she was entitled, she obtained it. [DE 1, ¶¶ 28, 31, 56, 81.] She appears to take issue with her ability to *continue* to obtain leave *had* she continued working for Superior at its Elmhurst office, which in turn would have presented a longer commute time and impeded upon her ability to take leave as she had in the past. But to the extent her interference theory is based on her ability to potentially access FMLA leave if she had continued working for Superior, it is based on speculation that she would have been denied leave to which she was entitled. In short, Wayne does not specifically allege that she was actually "denied" FMLA benefits – and courts have found that a failure to demonstrate a denial of benefits "dooms [an interference] claim." *Lane v. Magellan Health, Inc.*, 2023 WL 3303897, at *6 (W.D. Wis. May 8, 2023) (citing *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017) ("FMLA interference claim fails because he received the FMLA leave to which he was entitled."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015) (to prevail on an FMLA interference claim, an employee must show that "[his] employer denied [him] FMLA benefits to which he was entitled.")).

All told, if Wayne has a plausible claim for FMLA interference, it would have to be under another theory. In her response brief, she seems to agree. Relying on a more

recent case, *Ziccarelli v. Dart*, 35 F.4th 1079 (7th Cir. 2022), Wayne asserts that the gravamen of her FMLA claim is that Defendants intentionally transferred her role "far away from her parents for whom she had approved FMLA leave, her parents' physicians, and her own physicians (related to her own FMLA leave), thus effectively interfering with—or eliminating her ability to use FMLA leave." [DE 17 at 3.] This, she says, is enough to state a claim based on an "unlawful discouragement" theory. Accepting Wayne's allegations as true, as I must at this stage, I find that she has plausibly alleged an interference claim.

*Dart* involved an employee who had periodically taken FMLA leave and wanted to take additional leave. He called the defendant's FMLA manager, who was authorized to approve or deny employees' use of FMLA benefits. 35 F.4th at 1082. At summary judgment, the court found material factual disputes existed as to whether the FMLA manager allegedly discouraged him from taking additional leave and whether these actions prejudiced him. *Id.* at 1089. While the witnesses' accounts conflicted, if one credited the plaintiff's version of events, the FMLA manager told him, "[D]on't take any more FMLA. If you do so, you will be disciplined." *Id.* In sum, *Dart* stands for the proposition that an employer may interfere with an employee's FMLA rights by actively discouraging the employee from seeking or taking FMLA leave to which the employee is entitled, for example through threats of discipline, short of a denial of FMLA leave.

In reaching this conclusion, the court specifically noted that its holding was "consistent" with case law in other circuits, including *Diamond v. Hospice of Florida Keys,*

*Inc.*, 677 F. App'x 586 (11th Cir. 2017). *See* 35 F.3d at 1089 n.6. *Diamond* involved a plaintiff who took FMLA leave to care for her parents, who had serious health issues. She was informed by her employer that continued absences were affecting her job performance; a month later, she was fired. Like *Dart*, this case involved statements by the employer's human resources manager, in close proximity to the termination of plaintiff's employment, that the plaintiff's "continued unpaid time away from the workplace compromise[d] the quality of care [defendant was] able to provide as an organization," that a reasonable jury could take as a "warning that additional FMLA leave could put [plaintiff's] job in jeopardy." *Id.* at 593.

*Dart* speaks to what Wayne must prove to get to trial on her interference claim. In that distinct procedural context, the Seventh Circuit reaffirmed that an outright denial of benefits is not necessary to establish a triable interference claim. The court was clear that the statutory text "is not ambiguous," and for the FMLA to protect "the exercise of *or attempt to exercise*" FMLA rights, it must be read so that an inference or restraint without actual denial is still a violation." 35 F.4th at 1086 (emphasis added). To hold otherwise risks allowing "employers to interfere with or restrain the use of FMLA rights as long as no unlawful denial occurs," which would "conflict with and undermine the rights granted" to employees under the Act. *Id.* Indeed, the court specifically observed that the FMLA was "designed to accommodate 'the *legitimate* interests of employers,' [29 U.S.C.] § 2601(b)(3) (emphasis added), but [there is] no legitimate interest for employers in impeding access to FMLA benefits by subterfuge, concealment, or intimidation." *Id.* at

11

1087.

Here, Wayne asserts that Frasca's statement about the relocation of her position to Elmhurst was an "ultimatum" intended to deny her access to FMLA leave. Crediting her factual allegations, it is reasonable to infer that Frasca's abrupt announcement of the relocation of her job location was designed not to promote Superior's legitimate interests, but rather to intimidate Wayne in conjunction with taking FMLA leave, which she had already obtained and which she evidently wished to continue upon learning of the new location of her position. Wayne's factual allegations are parsimonious, but they are not so threadbare as to plead her out of court under a notice pleading regime, particularly in light of the circuit's guidance in *Dart*. Whether the facts bear out a triable claim is a question for another day. In sum, viewing the complaint in the light most favorable to Wayne, as I must at this stage, Count I states a plausible claim for FMLA interference.

Let's shift gears to the FMLA claims asserted against Collins individually. "Only an employer may be liable under the FMLA." *Katz v. Nw. Orthopaedics & Sports Med. Ltd.*, 2020 WL 1986965, at *9 (N.D. Ill. Apr. 27, 2020); *see* 29 U.S.C. § 2611(4)(A)(ii)(I) (defining "employer" as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer"). The Seventh Circuit has held that the statutory definition of "employer . . . encompasses some individual liability." *Eppinger v. Caterpillar Inc.*, 682 Fed. App'x 479, 481 (7th Cir. 2017). Relying on case law construing a parallel "employer" definition in another federal labor law, the Fair Labor Standards

Act, an individual qualifies as an employer and is subject to liability if "(1) the individual had supervisory authority over the complaining employee, and (2) was responsible in whole or part for the alleged violation." *Fiant v. Paizer*, 2021 WL 4928046, at *6 (S.D. Ind. Feb. 8, 2021) (citing *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)); *Summerland v. Exelon Generation Co.*, 2020 WL 7771144, at *3 (N.D. Ill. Dec. 30, 2020) (collecting cases) (applying FLSA test to determine scope of individual liability under FMLA).

Wayne argues that the individual claims against Collins should be allowed to proceed, because the constellation of allegations in the complaint "paint[s] a clear picture that she was put in a position of answering to Collins and that he controlled the script." [DE 17 at 4–5.] But that speaks past the relevant issue, as far as individual liability is concerned. In *Fiant*, as one recent example, the court noted that the defendant lacked the "authority to approve or deny an employee's request for FMLA leave," and such requests were processed by "Allegis Benefits." 2021 WL 4928046, at *6. The court also pointed out that the defendant "was not involved in the decision to terminate [the plaintiff]." *Id.* These facts precluded a finding that the defendant was "even partly responsible for the alleged FMLA violations" in her individual capacity. *Id.* That was the case notwithstanding the fact that the plaintiff, as an account manager for various car dealerships, worked under the defendant's "supervision" in the period leading up to her termination. *Id.* ("There appears to be no doubt that Paizer had supervisory authority over Fiant."); *see id.* at *2. *Accord Katz v. Nw. Orthopaedics & Sports Med. Ltd.*, 2020 WL 1986965, at *10 (N.D. Ill. Apr. 27, 2020).

13

Wayne avers that "FMLA Source," not Collins, considered her requests for FMLA leave. And she asserts that Frasca decided to move her job to Elmhurst, which she claims resulted in her constructive discharge. While Collins was aware of her taking leave days in April 2021, the absence of any specific factual allegations in the complaint concerning Collins' authority to approve or deny FMLA leave requests or ultimately terminate Wayne are fatal to her theory of individual liability. Accordingly, the claims against Collins will be dismissed. But this dismissal will be without prejudice, to allow Wayne a final opportunity to plead factual allegations demonstrating Collins' supervisory authority over her work and his responsibility in whole or part for the alleged interference with and retaliation for her exercise of FMLA rights, to the extent she reasonably believes she can do so.

## II.    ADA Claims

The second bundle of federal claims in the complaint arise under the ADA: one for failure to accommodate Wayne's alleged disability (Count VI), and the other for unlawful discrimination in connection with her termination (Count V). Superior argues that the failure-to-accommodate claim must fail because Wayne did not request an accommodation under the ADA, as opposed to the FMLA. Further, to the extent Wayne's claim is based on Superior's failure to accommodate "intermittent leave" after she was told her position was moving to Elmhurst, the company argues the claim is wholly based on Wayne's speculation that Superior would not have provided an accommodation she never requested before leaving her position. Finally, Superior

14

argues that the two ADA claims are duplicates of one another because the gravamen of both claims is that Defendants unlawfully discharged Wayne due to her alleged disability. [DE 8 at 2; DE 9 at 9–10; DE 18 at 8–10.]

A failure-to-accommodate claim requires allegations that: (1) the plaintiff is a qualified individual with a disability; (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accommodate her disability. *Brumfield v. City of Chi.*, 735 F.3d 619, 631 (7th Cir. 2013). Here, the issue is whether Wayne has adequately alleged that Superior failed to reasonably accommodate her disability. Each time Wayne sought "intermittent leave" as an "accommodation" for her cited disabilities, she admits she was granted such leave. So, Defendants argue, Count VI must be predicated on Wayne's concern that, had she remained in her role and needed to commute to Elmhurst, this accommodation "would have" been "obliterated." [DE 1, ¶ 84.] If that is the basis for Wayne's claim, her allegations fall far short of alleging an actual failure to accommodate her claimed disabilities, so the claim is wholly speculative and must fail. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Wayne responds that while she was working in Lake County, intermittent leave was a sufficient accommodation. But that changed during her phone call with Frasca. Wayne claims Frasca's statement that she either commute to Elmhurst or find another job "effectively took away" her existing accommodation, forming the basis of her claim. [DE 17 at 8.] Despite articulating how her allegations support this theory of harm, Wayne's response brief fails to identify any authority standing for the position that a

15

failure-to-accommodate claim lies where a plaintiff has previously obtained an accommodation, the location of their workplace changes, and the plaintiff decides the initial accommodation is inaccessible under the circumstances. Wayne makes no allegation that she requested an accommodation after the transfer to the Elmhurst location was proposed. There can be no ADA violation for a failure to accommodate when the employee never made a request for an accommodation in the first place. *Preddie*, 799 F.3d at 813 ("Mr. Preddie's failure to accommodate claim cannot succeed [because he] . . . never requested an accommodation.").

In sum, Wayne does not claim to have sought any accommodation after being informed that her role would require a much lengthier commute. Because the complaint before me fails to identify any request for a reasonable accommodation to enable her to perform her job *in Elmhurst* in light of her claimed disability, Count VI will be dismissed for failure to state a claim. Once again, the dismissal will be without prejudice.

### III.    IIED and Constructive Discharge Claims

As for Wayne's two state law claims—intentional infliction of emotional distress and constructive discharge (Counts III–IV)—these claims are going nowhere. Under Indiana law, the bar for claims of IIED is exceedingly high. Wayne's allegations don't come close to meeting it. And because Indiana is an employment-at-will state, and no exceptions to that doctrine apply here, her claim of constructive discharge is a nonstarter.

Under Indiana law, an IIED claim requires a showing of four elements: "(1) the

16

defendant must engage in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Harper v. Corizon Health Inc.*, 2018 WL 6019595, at *7 (S.D. Ind. Nov. 16, 2018) (citing *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997)). Liability for intentional infliction of emotional distress "is found only if there is extreme and outrageous conduct." *Id.* (citing *Gable v. Curtis*, 673 N.E.2d 805, 809-10 (Ind. Ct. App. 1996)). "Extreme and outrageous conduct" is a high bar: it encompasses scenarios in "which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Tracy v. Fin. Ins. Mgmt. Corp.*, 458 F. Supp. 2d 734, 747 (S.D. Ind. 2006) (quoting *Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996)). It is conduct "so extreme in degree" that it goes "beyond all possible bounds of decency," to be "regarded as atrocious, and *utterly intolerable in a civilized community*." *Conwell*, 667 N.E.2d at 777 (emphasis added).

Nothing in the present version of Wayne's complaint would make a reasonable person scream in outrage. If one believes the complaint, what happened to Wayne was certainly not pleasant – but to claim that the conduct was "so extreme in degree" as to be "intolerable in a civilized community" would be hyperbole. Unless Wayne can make allegations that would make a reasonable person scream in outrage, her IIED claim must be dismissed. It strikes me as a very high bar to meet in the employment context, given the plethora of cases dismissing such claims based on run-of-the-mill workplace disputes. *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1997) ("Indiana

courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases."); *Ellis v. CCA of Tenn., LLC*, 2010 WL 2605870, at *8 (S.D. Ind. June 21, 2010) ("Indiana courts shy away from awarding damages on the basis of [IIED] as an independent tort in employment cases"); *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1264 (Ind. Ct. App. 2002) (holding the firing of a employee pursuant to disciplinary process does not constitute extreme and outrageous conduct). That said, again, I will grant Wayne an opportunity to file an amended complaint to address the shortcomings in her present complaint, if she reasonably believes she is able to meet the high bar presented by applicable state law.

Turning to the constructive discharge claim, Defendants initially argued that Wayne failed to state a claim under Indiana law. [DE 9 at 7–9.] "Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, with or without reason." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653 (Ind. 2009) (quoting *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind. 1996)). There is a "strong" presumption of at-will employment and the Indiana Supreme Court is reticent to "adopt broad and ill-defined exceptions to the employment at will doctrine." *Id.* (citing *Orr. v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)).

Wayne's response relies entirely upon federal case law evaluating *retaliation claims* asserted under federal statutes—*not* Indiana common law—based on the plaintiffs' constructive discharges. [DE 17 at 7 (citing *Dart*, 35 F.4th at 1091 (FMLA retaliation and interference claims); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008) (constructive

discharge claim under Title VII); *Stamey v. Forest River, Inc.*, 37 F.4th 1220, 1225 (7th Cir. 2022) (constructive discharge claim brought under the ADA)).]  This line of argument does not meaningfully grapple with any of the recognized exceptions to Indiana's doctrine of at-will employment. Rather, Wayne argues that federal courts have acknowledged a plaintiff can make a federal statutory claim based on a theory of constructive discharge by showing either: (1) a "discriminatory work environment 'even more egregious than the high standard for hostile work environment,'" *Fischer*, 519 F.3d at 409 (quoting *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002)); or (2) "working conditions . . . so intolerable that a reasonable person would have felt compelled to resign," *Stamey*, 37 F.4th at 1225.

The complaint does not cite a basis in law under which Wayne is asserting her claim of constructive discharge. In her response, Wayne abandons any pretense that she is asserting a common law claim for constructive discharge. But she already seeks relief under the FMLA (Count II) and ADA (Count V) based, at least in part, on a theory that Defendants retaliated against her exercise of FMLA rights by presenting an unfair "ultimatum" that resulted in her constructive discharge.

As it stands, Wayne will be permitted to proceed with her FMLA retaliation claim and ADA discrimination claim against Superior and Frasca. Therefore, her claim for constructive discharge (Count IV) will be dismissed with prejudice, as it is duplicative of her claims under the FMLA and ADA (Counts II, V). *Accord Van Vliet v. Cole Taylor Bank*, 10 CV 3221, 2011 WL 148059, *2 (N.D. Ill. Jan. 18, 2011).

## Conclusion

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants'

Motion to Dismiss [DE 8] is **GRANTED IN PART**, as follows:

(1) Counts I and II, asserting FMLA interference and retaliation against Collins,

are **DISMISSED WITHOUT PREJUDICE** for failure to adequately allege Collins'

individual liability under the FMLA.

(2) Count VI, asserting Defendants failed to accommodate Wayne's disabilities in

violation of the ADA, is **DISMISSED WITHOUT PREJUDICE** for failure to state a

claim.

(3) Construing Count IV as a claim for FMLA retaliation or ADA discrimination

based on a constructive discharge theory, rather than a common law claim under

Indiana state law, the claim is **DISMISSED WITH PREJUDICE**, as it is duplicative of

Counts II and V.

In all other respects, the motion [DE 8] is **DENIED**.

The Court hereby **SETS** the deadline to file any motion to amend the pleadings

for **October 23, 2023.**

**SO ORDERED**.

ENTERED: September 22, 2023.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT